```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――x
JUNE ELIZABETH FEBUS,                         :
                                              :
                                              :   20-CV-8314 (OTW)
                               Plaintiff,     :
                    –against–                 :   OPINION & ORDER
                                              :
KILOLO KIJAKAZI                               :
COMMISSIONER OF SOCIAL SECURITY,[1]           :
                                              :
                               Defendant.     :
―――――――――――――――――――――――x
```

**ONA T. WANG, United States Magistrate Judge:**

I.  **Introduction**

On May 31, 2017, Plaintiff June Elizabeth Febus filed an application seeking Supplemental Security Income benefits ("SSI"). (Administrative Record, dated May 7, 2021, ECF 13 ("R.") 15). Plaintiff's request for SSI was denied on July 20, 2017. (R. 15). On August 10, 2017, Plaintiff filed a written request for a hearing, and on June 28, 2019, Plaintiff and her counsel appeared before Administrative Law Judge ("ALJ") Paul R. Armstrong. (R. 15). The ALJ issued a decision on August 6, 2019 finding that Plaintiff was not disabled and therefore not entitled to benefits. (R. 24). In the decision, the ALJ noted that Plaintiff's severe impairments included: "degenerative joint disease, degenerative disk disease, gastric impairment, chronic obstructive pulmonary disease ("COPD"), asthma, depression, anxiety, and residuals of [an] ingrown toenail, and hammertoe surgery." (R. 17).

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security.

1

Plaintiff appealed to the Appeals Council, which denied review of the ALJ's decision on August 11, 2020. (R. 1). Plaintiff then appealed the ALJ's November 20, 2019 decision, alleging that the ALJ "fail[ed] to properly evaluate [her] mental impairments and fail[ed] to provide an RFC that is consistent with the requirements of SSR 96-8p." (R. 261, Ex. 15E). The parties submitted a joint stipulation of facts detailing Plaintiff's medical history, the opinion evidence, and the administrative hearing testimony, which I incorporate by reference. (Joint Stipulation, dated November 24, 2021, ECF 24 ("Stip.")). This case is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c).

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

## II.   Background

Plaintiff is a 55-year-old woman who worked as a cashier from 1984 to 2006, and then a as direct care counselor from 2006 to 2007.[2] (R. 198, Ex. 1E at 3). Plaintiff reported on her Disability Report Form, dated July 6, 2017, that she suffers from bipolar disorder, PTSD, depression, and other physical ailments. (R. 199, Ex. 1E at 2). Plaintiff reported that because of her conditions, she struggles to get along with family, friends, neighbors, and others because she gets very anxious and therefore cannot be around people. (R. 215, Ex. 3E at 6). Plaintiff also reported difficulty staying on task, following spoken instructions, and remembering things. (R. 210–218, Ex. 3E).

---

[2] Plaintiff also completed a work history report stating that she had been a cashier from January 2001 to May 2002, and then a direct care counselor from November 2005 to April 2006. (R. 220, Ex. 4E at 1).

A. *The ALJ's Decision*

The ALJ concluded that Plaintiff was not disabled under the Social Security Act. Specifically, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 31, 2017, and that Plaintiff suffers from the following severe impairments: "degenerative joint disease, degenerative disk disease, gastric impairment, COPD, asthma, depression, anxiety and residuals of ingrown toenail and hammertoe surgery." (R. 17). ALJ Armstrong also concluded that Plaintiff has the RFC to perform light work. (R. 20). He defined light work as limited to "lift[ing] or carr[ying] 20 pounds occasionally and 10 pounds frequently, stand[ing] or walk[ing] for six of eight hours during the workday, and sit[ting] for six of eight hours during the workday." (R. at 20). Additionally, when determining the severity of Plaintiff's mental impairments, the ALJ concluded that "there are moderate limitations in understanding, remembering, or applying information, mild limitations in interacting with others, moderate limitations in the ability to concentrate, persist, or maintain pace, and mild limitations in adapting and managing oneself." (R. 21). Lastly, the ALJ determined that "the claimant's statements concerning the intensity, persistence, and limiting effects of her mental impairments are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. 22).

III.   Analysis

The ALJ incorrectly cited to and misinterpreted the Record, tainting his assessment of the medical opinion evidence with factual errors.

A. *Applicable Law*

When determining whether a claimant has a disability, the ALJ must follow a five-step sequential evaluation process. The initial burden lies on the claimant during the first four steps to prove that they are disabled and then at the last step the burden shifts to the commissioner. First, the claimant must prove that they are not currently engaged in substantial gainful activity. Second, the claimant must prove that their impairment is "severe" and therefore significantly limits their physical or mental ability to perform basic work activities. Third, the claimant must prove that their impairment falls within one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. Fourth, the claimant must prove that they are unable to meet the physical and mental demands of their previous employment. Once the Plaintiff has satisfied all four steps, the burden then shifts to the commissioner. While assessing whether the claimant has a disability, the commissioner must consider their "residual functional capacity ("RFC"), age, education, and past work experience, that he is capable of performing other work." Should the commissioner prove that other work exists for the claimant, the claimant is provided with the opportunity to prove that they cannot perform that work.

For claims such as this one, filed on or after March 17, 2017, ALJs apply the new regulations in 20 C.F.R. §§ 404.1520c and 416.920c in lieu of applying the treating physician rule. *See Acosta Cuevas*, 2021 WL 363682, at *9 (collecting cases). Under the new regulations ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). Instead, ALJs "will articulate in [their] determination or decision how persuasive [they] find all of the medical opinions." 20 C.F.R. § 416.920c(b). ALJs must consider all medical opinions and determine their respective

4

persuasiveness considering: supportability; consistency; relationship of the medical source to the claimant; specialization; and "other factors." 20 C.F.R. § 404.1520c(c)(1)–(5). The supportability and consistency factors are the "most important." 20 C.F.R. § 416.920c(a). Accordingly, the regulations mandate that ALJs "will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 416.920c(b)(2) (emphasis added); *Vellone v. Saul*, No. 20-CV-261 (RA)(KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *R. & R. adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("[I]n cases where the new regulations apply, an ALJ must explain his/her approach with respect to the first two factors when considering a medical opinion."). "Supportability" is "the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to how the medical source's opinions compare with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Although ALJs are only required to articulate their consideration of those two factors, ALJs must consider all five factors when determining a medical opinion's persuasiveness. 20 C.F.R. § 416.920c(c).

Additionally, it is well-settled that an "ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.").

Social Security Ruling ("SSR") 85-15 states that a substantial loss of ability to meet any of the basic mental demands of competitive, remunerative, unskilled work would justify a finding

of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember, and remember simple instructions; to respond appropriately to supervision, coworkers, and unusual work situations; and to deal with changes in a routine work setting." SSR 85-15. "Where . . . an ALJ misreads a critical piece of evidence in the record and then relies on his error in reaching his opinion, the opinion cannot be said to be supported by 'substantial evidence.'" *Joseph v. Astrue*, No. 06-CV-1356 (RMB) (DCF), 2007 WL 5035942, at *1 (S.D.N.Y. Dec. 28, 2007), *R & R adopted*, No. 06-CV-1356 (RMB) (DCF), 2008 WL 850158 (S.D.N.Y. Mar. 20, 2008). "In some cases where the ALJ bases his decision on a misinterpretation of the evidence, remand may be warranted to afford the ALJ with an opportunity to re-evaluate the plaintiff's claim in light of what the evidence actually reveals." *Id.*

    B. <u>The ALJ Failed to Properly Evaluate Nurse Robinson's Medical Opinion.</u>

Nurse Robinson[3] opined that Plaintiff has "Extreme Loss"[4] in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods (ie 2 hr [sic] segments), and work in coordination with or proximity to others without being unduly distracted. (R. 1170, Ex. 7F at 3). Nurse Robinson further concluded that Plaintiff has "Marked Loss"[5] in her ability to remember locations and work-like procedures, sustain an ordinary routine without special supervision, deal with stress

---

[3] N.P. Robinson is a psychiatric/mental health specialist. (Stip. 3 n.4).

[4] "Extreme Loss" constitutes "[c]omplete loss of ability in the named activity; cannot sustain [p]erformance during an 8-hour workday." (R. 1170, Ex. 7F at 2).

[5] "Marked Loss" is defined as "substantial loss of ability in the named activity; can sustain [p]erformance only up to 1/3 of an 8-hour workday." (R. 1170, Ex. 7F at 2).

or semi-skilled and skilled work, complete a normal workday or work week without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 1171, Ex. 7F at 3). Nurse Robinson also determined that Plaintiff has "Marked Loss" in her ability to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, travel in unfamiliar places, use public transportation, or set realistic goals or make plans independently of others. (R. 1171, Ex. 7F at 3).

The ALJ discounted Nurse Robinson's opinion because he found that it was "contradicted by the limited testimony regarding psychological limitations during the hearing" and because Mental Status Exams ("MSEs") at various points in the Record "showed stable moods[,] average intelligence, and normal concentration." (R. 22). At no point, however, did Plaintiff provide testimony "regarding [her] psychological limitations." (R. 22). Rather, the ALJ assessed Plaintiff's "psychological limitations" by evaluating how she participated in the hearing. Specifically, the ALJ concluded that Plaintiff's psychological limitations were not so severe because Plaintiff "understood and responded appropriately during the hearing," and "was able to concentrate and follow along with the hearing." (R. 21). By assessing Plaintiff's psychological limitations based on Plaintiff's hearing testimony, and then using that conclusion as a basis for rejecting Nurse Robinson's opinion, the ALJ impermissibly substituted his lay opinion for that of a medical expert. *See Primes v. Colvin*, No. 6:15-CV-06431 (MAT), 2016 WL 446521, at *4 (W.D.N.Y. Feb. 5, 2016) (remanding where the ALJ was "playing doctor" by substituting his lay opinion for that of a doctor). "Although the ALJ is free to choose between

7

properly submitted medical opinions, he may not substitute his own lay opinion for those of medical experts." *Decker v. Saul*, 2020 WL 5494369, at *3 (W.D.N.Y. Sept. 11, 2020) (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)). Accordingly, remand is warranted.[6]

### C. The ALJ did Not Adequately Review all the Medical Evidence in the Record.

Additionally, the ALJ's analysis that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the evidence in the Record, was based on a misreading of the Record. The ALJ reasoned, *inter alia*, that Plaintiff only underwent "conservative spinal treatment that did not include surgery, physical therapy, or injection treatments," for her back problems.[7] (R. 22). On at least two occasions, however, Plaintiff did receive physical therapy treatment for her lower back pain. (R. 1202, Ex. 9F at 24, 37). Accordingly, the Court cannot say that the ALJ adequately reviewed all of the medical evidence in the Record while making his decision. *See Gomez v. Comm'r of Soc. Sec.*, 2017 WL 1194506 (BCM) at *15-17 (S.D.N.Y. Mar. 30, 2017) (holding that remand was required because of the ALJ's factual errors which were significant to his ultimate conclusion).

---

[6] Although the ALJ also stated that Nurse Robinson's opinion was inconsistent with the Record by citing to MSEs that showed Plaintiff exhibited "stable moods[,] average intelligence, and normal concentration," the ALJ does not explain why or how these MSE notations are in conflict with Nurse Robinson's opinion that Plaintiff cannot "maintain attention and concentration for **extended periods (ie 2 hr [sic] segments)**." (R. 1170, Ex. 7F at 3) (emphasis added). Moreover, several of these citations do not support the ALJ's determination that Plaintiff exhibited "stable moods" and "normal concentration." *See e.g.*, R. 1105, Ex. 4F at 28 (showing Plaintiff's mood was depressed and irritable and making no comment on her concentration or intelligence); R. 1289, Ex. 10F at 27 (silent as to concentration and intelligence); R. 1324, Ex. 10F at 62 (noting Plaintiff's mood as "irritable," and making no comment on her concentration or intelligence).

[7] The ALJ also found that P.A. Capra's medical opinion was "contradicted by testing in the record that showed full strength and did not show motor deficits." (R. 22).

IV. **Conclusion**

Accordingly, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, and the Commissioner's Motion for Judgment on the Pleadings is **DENIED.** This Court remands the case for further administrative review, including but not limited to a *de novo* hearing and a new decision.

**SO ORDERED.**

Dated: July 29, 2022
New York, New York

*s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge